**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

```
F I L E D
APR 2 9 2014
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA
```

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | )     Case No. 1:13-cr-336 |
| JOHN WATSON, JR., | ) |
| Defendant. | ) |
| | ) |
| | ) |

## ORDER

The matter is before the Court on the government's motion to medicate the defendant, John Watson, Jr., involuntarily in order to to restore him to competency. (Doc. 24). On July 18, 2013, the Magistrate Judge found that the government had established by clear and convincing evidence that all four prongs of the *Sell* test[1] had been satisfied, and therefore ordered the involuntary medication of the defendant to restore him to competency. (Doc. 38). On August 21, 2013, the Magistrate Judge vacated that order,[2] and on August 23, 2014, the Court referred the matter back to the Magistrate Judge pursuant to 28 U.S.C. § 636 for further proceedings and for the preparation of a Report and Recommendation concerning the government's motion. (Doc. 56). The Magistrate Judge's Report and Recommendation issued on March 7, 2014, and thereafter, on March 21, 2014, defendant filed his objection to the Report and Recommendation.

---

[1] *Sell v. United States*, 539 U.S. 166 (2003).

[2] The Magistrate Judge vacated the prior order to medicate the defendant involuntarily to restore him to competency because there was no controlling case law on the issue of whether a magistrate judge has the authority to order involuntary medication. Thus, the Magistrate Judge stated that the most appropriate course of action was to vacate the prior order without deciding whether a magistrate judge has the authority to order involuntary medication to restore a defendant to competency. (Doc. 54).

Because all facts and legal contentions are adequately set forth in the existing record, oral argument would not aid the decisional process. Accordingly, the matter is now ripe for disposition.

For the reasons that follow, and based on a *de novo* review of the record, the Court adopts as its own the findings of fact and recommendation of the Magistrate Judge as set forth in the March 7, 2014 Report and Recommendation.

## I.

The government has filed a motion seeking to have defendant medicated involuntarily pursuant to the *Sell* decision, which held that the Fifth Amendment permits the government to administer antipsychotic drugs involuntarily to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial only if the following four conditions exist:

(1) Important government interests are at stake;

(2) Involuntary medication will significantly further those concomitant interests;

(3) Involuntary medication is necessary to further those interests; and

(4) Involuntary medication is medically appropriate—that is, administration of the drugs is in the patient's best medical interest in light of his medical condition.

*Sell*, 539 U.S. at 180-181. As the Report and Recommendation correctly notes, the record evidence reflects that the four *Sell* factors are satisfied in this case, and thus, defendant may be involuntarily medicated consistent with the Fifth Amendment.

## A.

The first *Sell* factor is clearly present here. The government has an unquestionably important interest in bringing defendant to trial for the serious crimes with which he is charged: attempted destruction of an aircraft, in violation of 18 U.S.C. § 32(a)(1); felon in possession of a

2

firearm, in violation of 18 U.S.C. § 922(g)(1); and use of a firearm during a crime of violence, in

violation of 18 U.S.C. § 924(c)(1)(A). The maximum sentences allowed for these crimes

confirm their seriousness. Thus, the attempted destruction of an aircraft has a maximum penalty

of twenty years in prison, felon in possession of a firearm has a maximum penalty of ten years in

prison, and the use of a firearm during a crime of violence has a mandatory minimum penalty of

ten years in prison, which term of imprisonment must run consecutive to any sentence for any

other offenses for which the defendant is convicted. 18 U.S.C. § 924(c)(1)(A)(iii).  Given the

seriousness of these crimes, there is no doubt of the government's important interest in bringing

defendant to trial. As the Supreme Court stated in *Sell*, the government's interest "in bringing to

trial an individual accused of a serious crime is important." *Sell*, 539 U.S. at 180-81. Thus, as

the Magistrate Judge correctly concluded, the first prong of *Sell* is satisfied because defendant

has been charged with serious crimes, and the government has an important interest in bringing

defendant to trial for these crimes.

Defendant concedes that he has been charged with serious crimes, but argues that the first

*Sell* prong is not satisfied in this case because two special circumstances outweigh the

government's interest in bringing defendant to trial: (1) that defendant is likely to prevail on an

insanity defense, and (2) that defendant, if not tried, would likely be involuntarily committed

pursuant to 18 U.S.C. § 4246. Defendant's arguments are unpersuasive for two reasons.

First, the mere possibility of a successful insanity defense does not diminish the

government's interest in bringing this case to trial. If defendant chooses to raise an insanity

defense at trial, he will face the heavy burden of "proving, by clear and convincing evidence, that

at the time of the offense, he was unable to appreciate the nature and quality or the wrongfulness

of his acts because of severe mental disease or defect." *United States v. Christobal*, 293 F.3d

134, 144 (4th Cir. 2002).  Contrary to defendant's claim that an insanity defense will almost

3

certainly succeed, none of the three experts in this case has expressed that defendant was unable to appreciate the wrongfulness of his actions on the date of the charged conduct.[3]  Significantly, the experts' conclusion that defendant is not competent *at this time* to stand trial due to his mental illness is not the same as a conclusion that defendant is not guilty by reason of insanity. Defendant's contention that his affirmative defense will be successful is thus unsupported, and the mere assertion that he intends to raise such a defense does not substantially diminish the government's important interest in bringing defendant to trial.

Second, the possibility of civil commitment proceedings against defendant pursuant to 18 U.S.C. § 4246 may affect somewhat the government's interest in bringing this case to trial, but it does not lessen the government's interest so substantially as to deny the government the opportunity to bring defendant to trial for the very serious crimes charged.  As the Supreme Court stated in *Sell*, "We do not mean to suggest that civil commitment is a substitute for a criminal trial...The potential for confinement affects, but does not totally undermine, the strength of the need for prosecution." *Sell*, 539 U.S. at 180.  Here, standing alone, the mere somewhat speculative possibility of civil commitment does not undermine the government's strong interest in prosecuting this defendant for the serious crimes charged against him.

**B.**

As the Magistrate Judge correctly concludes, the second *Sell* factor is also clearly present, as the existing record makes clear that involuntary medication will significantly further the

---

[3] The Report and Recommendation states that Mr. Watson knew his actions were legally wrong because he felt the need to justify his alleged criminal conduct with his delusional beliefs. (Doc. 66, p. 20).  This observation is unpersuasive.  As the defendant's memorandum in opposition correctly notes, the fact that defendant justified his actions with his delusional beliefs does not necessarily mean that defendant knew what he was doing was legally wrong.  Indeed, defendant's justification of his actions on the basis of his delusional beliefs may also indicate that he did not believe his actions were legally wrong *because* of his delusional beliefs.

4

government's interest in prosecuting defendant for the alleged crimes. To satisfy this prong of *Sell*, the government must establish that involuntary medication (1) is substantially likely to render the defendant competent to stand trial and (2) is substantially unlikely to have side effects that will interfere significantly with defendant's ability to assist counsel in conducting the trial defense. *Sell*, 539 U.S. at 181.

The record convincingly reflects that the government has satisfied this factor. Thus, Dr. Lucking, the staff psychiatrist at FMC Butner who interviewed defendant, testified that the treatment plan he designed for defendant, which includes the administration of anti-psychotic medications, satisfies these requirements. Dr. Lucking further testified that he has experience treating defendant's delusional disorder because he has successfully treated ten other patients with the same disorder. Moreover, Dr. Lucking testified that any side effects of the prescribed medication are unlikely to interfere with defendant's ability to assist his counsel in his own defense.

Defendant argues that the second prong of *Sell* is not satisfied because Dr. Lucking's treatment plan of involuntary medication is unlikely to succeed. This argument is unpersuasive. As the Report and Recommendation correctly notes, defendant's medical expert, Dr. Hilkey, did not state in his report that Dr. Lucking's plan will not succeed. Instead, Dr. Hilkey stated that "there is some question about the efficacy of pharmacological treatment with Mr. Watson" and noted that "pharmacological treatment of Delusional Disorders is less efficacious than with typical psychotic disorders." (Doc. 66, p. 22). Dr. Hilkey also stated that he strongly supports the use of supportive and cognitive behavior psychotherapy alongside pharmacological treatments, and that any treatment approach should be administered in a supportive manner designed to mitigate the fears of the individual being treated. Importantly, however, Dr. Hilkey did not opine in his forensic evaluation that Dr. Lucking's treatment plan will be unsuccessful.

5

In light of the testimony of Dr. Lucking in his forensic evaluation and at the *Sell* hearing, it is clear that Dr. Lucking's treatment plan is substantially likely to render defendant competent to stand trial and is unlikely to have side effects that will interfere substantially with defendant's ability to assist counsel in conducting the defense.

## C.

The Magistrate Judge also correctly concluded that the third *Sell* factor is also clearly met in this case. Involuntary medication is necessary to further the government's important interests because less intrusive, alternative means are unlikely to achieve substantially the same results. *Sell*, 539 U.S. at 181. As the Report and Recommendation correctly notes, a court order backed by the power of contempt requiring defendant to take his medication is unlikely to succeed in light of the fact that defendant has already failed to comply with the Court's July 3, 2013 Order to that effect. Moreover, Dr. Lucking stated in his forensic evaluation that less intrusive treatments, such as psychotherapy, are unlikely to be effective because defendant does not believe he is ill and thus will not likely engage productively in any form of psychotherapy. This conclusion is firmly supported by the record, which indicates that there is currently no evidence in the psychiatric literature that psychotherapy alone is an effective alternative to treatment with antipsychotic medication for persons with defendant's condition. Thus, there are no less intrusive means available that will achieve substantially the same results as involuntary medication, and therefore, this Sell factor is clearly met.

## D.

Finally, as the Magistrate Judge correctly concluded, the fourth *Sell* factor exists in this case because involuntary administration of the proposed medications is medically appropriate given defendant's medical condition. Defendant stated that he has previously been treated with risperidone—the antipsychotic medication proposed in Dr. Lucking's treatment plan—and it

appears he did not suffer any major side effects or adverse reactions. (Doc. 66, p. 25). Moreover, as Dr. Lucking testified at the *Sell* hearing, risperidone "is the best choice for treatment at this point in time for [defendant]." *Id.* Although defendant stated at the *Sell* hearing that he experienced several unpleasant side effects that he associated with use of risperidone, Dr. Lucking testified persuasively that none of the symptoms defendant identified were side effects of risperidone, and likely were caused instead by other factors such as anxiety, irritation, anger, or other medical conditions. *Id.* Finally, Dr. Lucking testified that he has treated ten patients with delusional disorder, and he believes all of them were successfully treated with antipsychotic medication. *Id.* at 26. In light of this testimony and Dr. Lucking's forensic evaluation, the proposed treatment plan is medically appropriate.

## II.

Therefore, upon consideration of the March 7, 2014 Report and Recommendation of the Magistrate Judge designated to conduct a hearing in this matter, and upon an independent *de novo* review of the record, it is hereby **ORDERED** that the Court adopts as its own the findings of fact and recommendation of the Magistrate Judge, as set forth in the March 7, 2014 Report and Recommendation.

Accordingly, it is hereby **ORDERED** that the government's motion for medical treatment (Doc. 24) is **GRANTED**.

It is further **ORDERED** that defendant, by counsel, has leave to file a motion to reconsider this ruling should circumstances change significantly so as to alter the *Sell* analysis set forth here.

The Clerk is directed to send a copy of this Order to all counsel of record.

Alexandria, Virginia
April 29, 2014

7

/s/
T. S. Ellis, III
United States District Judge